IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDON MAYFIELD, an individual,        Civil No. 04-1427-AA
MONA MAYFIELD, an individual, and       OPINION AND ORDER
SHANE MAYFIELD, SHARIA MAYFIELD,
and SAMIR MAYFIELD, individuals,
by and through their guardian
ad litem Mona Mayfield,

       Plaintiffs,

   vs.

ALBERTO R. GONZALES, Attorney
General of the United States of
America, RICHARD K. WERDER, an
individual, TERRY GREEN, an
individual, JOHN T. MASSEY, an
individual, MICHAEL WIENERS, an
individual, THE DEPARTMENT OF
JUSTICE, an executive department
of the United States of America, THE
FEDERAL BUREAU OF INVESTIGATION, an
agency of the United States of
America, and JOHN DOES 1 - X,
individuals,

       Defendants.

_____

Gerry Spence
The Spence Law Firm LLC
15 South Jackson Street, P.O. Box 548
Jackson, Wyoming 83001

Elden M. Rosenthal
Rosenthal & Greene, P.C.
1001 S.W. Fifth Avenue, Suite 1907
Portland, Oregon 97204

Michele Longo Eder
Michele Longo Eder, LLC
4 SW High Street, P.O. Box 1530
Newport, Oregon 97365
     Attorneys for plaintiffs

Edward J. Martin
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C. 20044-7146
     Attorney for defendants Richard K. Werder, Michael Wieners,
     and Terry L. Green

Thomas Peter Mann
Greenspun & Mann, P.C.
10605 Judicial Drive, A-5
Fairfax, Virginia 22030
     Attorney for defendant John T. Massey

Sara W. Clash-Drexler
U.S. Department of Justice
Federal Programs Branch, Civil Division
20 Massachusetts Avenue, N.W., Room 6132
P.O. Box 883
Washington, D.C. 20044
     Attorney for defendants Department of Justice and
     Federal Bureau of Investigation

AIKEN, Judge:

## PROCEDURAL BACKGROUND

_____Plaintiffs filed this case on October 4, 2004, alleging

various civil rights violations.  Specifically, plaintiffs allege

a <u>Bivens</u>[1] claim for unlawful arrest and imprisonment and unlawful searches and seizures against the four individual defendants. <u>See</u> Complaint, Claims 1 -10, ¶¶ 1-74.

Plaintiffs next bring a claim under the Privacy Act, 5 U.S.C. § 552a, alleging that the defendants began "leaking" information contained within DOJ and FBI files to the national and international media regarding Mayfield and his arrest. <u>Id.</u>, Claim 11, ¶¶ 75-86.

Plaintiffs then move for injunctive and declaratory relief against defendants DOJ and the FBI regarding Foreign Intelligence Surveillance Act (FISA) searches and surveillance. <u>See</u> Pub. L. No. 95-511, 92 Stat. 1790 (Oct. 25, 1978), 50 U.S.C. ¶¶ 1801-1811. <u>Id.</u>, Claim 12, ¶¶ 87-90. Claim Twelve includes plaintiffs' challenge to the constitutionality of portions of the "Patriot Act" (The United and Strengthening of America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001)). <u>Id.</u>, ¶ 89.

Finally, plaintiffs allege a claim for the return of property improperly seized. <u>Id.</u>, Claim 13, ¶¶ 91-93.

There are five motions pending before this court. They are: (1) plaintiffs' motion for continuance of summary judgment motion

---

[1] <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

(FRCP 56(f)); (2) plaintiffs' motion to compel defendant John
Ashcroft [now defendant Alberto Gonzales] to provide notice (50
U.S.C. §§ 1806 and 1825(b)); (3) defendants Department of Justice
(DOJ) and Federal Bureau of Investigation's (FBI) motion to
dismiss counts twelve and thirteen of the complaint; (4)
defendant John T. Massey's (Massey) motion to dismiss or
alternative motion for summary judgment; and (5) defendants
Werder, Green, and Wieners' motion to dismiss or alternative
motion for summary judgment. Defendants moved against all claims
except for plaintiffs' Eleventh Claim for Relief under the
Privacy Act.

The court held oral argument on July 15, 2005. The parties
provided the court written briefs, including several supplemental
briefs, in addition to comprehensive argument lasting five hours.

<u>THE PARTIES</u>

Plaintiffs are the arrestee, Brandon Mayfield, his wife,
Mona Mayfield, and their three minor children. Defendants,
Werder, Green, and Wieners are employees and agents of the FBI.
Green and Wieners live and work in Virginia, Werder resides and
works in Oregon. Defendant Massey is a retired employee and
agent of the FBI who also resides and works in Virginia.
Defendants DOJ and the FBI are agencies of the United States
Government as defined by the U.S. Privacy Act. Finally,
defendant Gonzales is the Attorney General of the United States

of America, and is the head of the DOJ, responsible for the
actions of that Department, and similarly responsible for the
actions of the FBI.

FACTUAL BACKGROUND

In brief, the facts as alleged by plaintiffs are as follows:
On March 11, 2004, in Madrid, Spain, terrorists' bombs exploded
on commuter trains, murdering 191 persons, and injuring another
1600 persons, including three United States citizens.  Shortly
after the bombings, the Spanish National Police (SNP) recovered
fingerprints from a plastic bag containing explosive detonators.
The bag was found in a Renault van located near the bombing site.

On March 13, 2004, the SNP submitted digital photographs of
the latent fingerprints lifted from the plastic bag to Interpol
Madrid, which then transmitted the digital photographs to the FBI
in Quantico, Virginia.  On that same day, the Latent Print Unit
of the FBI initiated an "AFIS search" in an attempt to match the
latent prints received from Spain with known prints in the FBI
computer system.  The FBI was unable to locate a fingerprint
match.

On March 14, 2004, the FBI requested and received from Spain
"higher resolution" digital photographs of the eight latent
prints and on March 15, 2004, another AFIS search was performed.
The FBI technicians asked the computer to return 20 candidates
whose known prints had features in common with what was

identified as Latent Finger Print #17 (LFP #17).  On March 15,
2004, the computer produced 20 candidates that met the criteria.
Each candidate was identified by an AFIS "score," a number that
reflected a rank as to how closely the AFIS computer determined
each candidate's fingerprint matched certain features of LFP #17.
Also included was an identification number for each candidate
which allowed the FBI to retrieve the names, original fingerprint
cards, and demographic information of each candidate on the list.
Demographic information included name, date of birth, sex, race,
and social security number.  This information allowed the FBI to
perform background checks on each of the 20 candidates.

On March 17, 2004, defendant Green, a "Supervisory
Plaintiff Brandon Mayfield (Mayfield) was ranked #4 on the
list produced by AFIS.  Mayfield is an American citizen born in
Oregon and reared in Kansas.  He lives with his wife and three
children in Aloha, Oregon, a suburb of Portland.  Mayfield is 38
years old, a former Army officer with an honorable discharge, and
a practicing Oregon lawyer.  Prior to his arrest, he had not
traveled outside the United States since 1994, and he had never
been arrested for a crime.  Plaintiffs allege that FBI examiners
were aware of Mayfield's Muslim faith and that this knowledge
influenced their examination of Mayfield's fingerprints.

On March 17, 2004, defendant Green, a "Supervisory
Fingerprint Specialist" for the FBI, concluded that Mayfield's
left index fingerprint matched LFP #17.  Plaintiffs allege that

had Green properly performed the fingerprint identification analysis, he would have been compelled to declare that Mayfield's print did not, in fact, match LFP #17.  Plaintiffs allege that Green, however, was improperly influenced by Mayfield's adherence to the Muslim faith.

Green then submitted the print to defendant Massey an allegedly "independent fingerprint examiner" for verification. Massey is a former FBI employee, now retired, hired by the FBI on a contract basis to "perform forensic examination of latent fingerprints."  Plaintiffs allege that when Massey was employed by the FBI, he was reprimanded on at least three occasions for erroneously "identifying" fingerprints.  Plaintiffs contend that Massey was selected to "verify" the identification because his "employment history of discipline for poor performance would strongly motivate him to agree and verify the prior identification."  Plaintiffs believe that Massey was told of the prior identification by Green of LFP #17 to Mayfield and that Mayfield was a practicing Muslim.

The alleged "match" was then submitted to defendant Wieners, a senior FBI manager, for verification.  It is FBI policy that when there are less than 12 points of similarity between a latent print and a known print, a senior manager must review the alleged match.  Plaintiffs allege that Wieners knew, prior to examining the print, that two examiners before him had identified and

verified the purported match and Wieners knew that Mayfield is
Muslim.  Wieners also verified that LFP #17 matched Mayfield's
print.

On March 20, 2004, the FBI issued a formal report matching
Mayfield's print to that of LFP #17.  On March 21, 2004, FBI
surveillance agents began to watch Mayfield and to follow
Mayfield and members of his family when they traveled to and from
the Bilal Mosque, the family's place of worship; to and from
Mayfield's law office, his place of employment; to and from the
children's school; and to and from family activities.

At some point after the wrongful fingerprint identification,
plaintiffs allege that the FBI applied to the Foreign
Intelligence Security Court (FISC) for an order authorizing the
FBI to place electronic listening devices ("bugs") in the "shared
and intimate" rooms of the Mayfield family home; executed
repeated "sneak and peek" searches of the Mayfield family home,
occurring when the family was away from the home and performed
"so incompetently that the FBI left traces of their searches
behind, causing the Mayfield family to be frightened and believe
that they had been burglarized;" obtain private and protected
information about the Mayfields from third parties; execute
"sneak and peek" searches of the Law Office of Brandon Mayfield;
and place wiretaps on Mayfield's office and home phones.  The
application for the FISA order before the FISC was personally

approved by the U.S. Attorney General at the time, John Ashcroft.

On April 2, 2004, Mayfield's prints were sent by the FBI to Spain.  Plaintiffs allege that by that date, the U.S. Government had already been advised by the Spanish government that Moroccan immigrants were suspects in the Madrid bombing and had been taken into custody, and that the Spanish government was not aware of any information connecting the Moroccans with Mayfield or anyone in the United States.

The SNP examined the FBI's report, and Mayfield's fingerprints, and concluded that there were dissimilarities in the comparison of the two prints for which there was no explanation.  On April 13, 2004, the SNP provided a written report to the FBI explaining that they had compared LFP #17 to Mayfield's fingerprints, and concluded that there was no match.

On April 21, 2004, the FBI sent one or more agents to Madrid to meet with their Spanish counterparts.  Spanish authorities who met with the FBI agents "refused to validate" the FBI's conclusion that LFP #17 and Mayfield's print were a match.

Plaintiffs allege that DOJ and FBI employees "concocted false and misleading affidavits" in order to justify even more intrusive searches and in order to justify Mayfield's arrest as a "material witness."  Defendant Werder, an FBI investigator, submitted a "concocted affidavit" to a federal judge of this court, which stated that defendants Green, Wieners, and Massey

considered LFP #17 a "100% positive identification" of Mayfield. Although the affidavits stated that "preliminary findings" of the SNP "were not consistent" with the FBI fingerprint analysis, no mention was made of Spain's April 13, 2004, report to the FBI that stated the SNP did not agree with the FBI's fingerprint match of LFP #17 and Mayfield.

The affidavit included "speculative and prejudicial narratives" focusing on Mayfield's religion and association with co-practitioners.  Plaintiffs cite as an example, Agent Werders' inclusion in his affidavit the fact that Mayfield attended a mosque and advertised his legal services in "Jerusalem Enterprises," or what are known as the "Muslim Yellow Pages," as evidence connecting Mayfield to the bombings as a material witness.  Plaintiffs respond that the "Muslim Yellow Pages" also include advertising by major companies such as Avis, Best Western and United Airlines.  Plaintiffs allege that the affidavit submitted to this court was knowingly and/or recklessly false and misleading.

Due to Mayfield's protestations of innocence, and the issue of whether Mayfield's prints actually matched LFP #17, the judge assigned to this matter ordered that LFP #17 be provided to a court-appointed expert witness for comparison to Mayfield's known fingerprints.  That expert, Kenneth Moses, was selected by Mayfield and his defense attorneys.  On May 19, 2004, Moses

testified in the material witness proceeding that he had "compared the latent prints that were submitted on Brandon Mayfield, and [he] concluded that the latent print is the left index finger of Mr. Mayfield." The court-appointed expert concurred in the FBI identification.

Based on these affidavits, broad search warrants were sought and issued. Mayfield's family home and law office were searched. Computer and paper files from his family home, including his children's homework, were seized. Mayfield was ultimately arrested and initially held in the lock down unit at the Multnomah County Detention Center. His family was not told where he was being held, however, he and his family were told that he was being held as a primary suspect on offenses punishable by death, and that the FBI had made a 100% match of his fingerprint with the Madrid fingerprint. Plaintiffs allege that leaks to the media by the FBI and DOJ led to local, national, and international headlines that Brandon Mayfield's fingerprints linked him to the Madrid bombings.

Mayfield was ultimately arrested and imprisoned for the period May 6, 2004, through May 20, 2004, and then held on home detention through May 24, 2004.

On May 19, 2004, the SNP advised the FBI, and on May 20, 2004, news reports revealed, that Spain had matched the Madrid fingerprint with an Algerian, Mr. Ouhane Daoud. Mayfield was

released from prison the following day.

<u>STANDARDS</u>

<u>Motion to Dismiss</u>

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1052 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. <u>Rosen v. Walters</u>, 719 F.2d 1422, 1424 (9th Cir. 1983).

<u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). Substantive law on an issue determines the materiality of a fact. <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Electrical</u>, 809 F.2d at 630.

DISCUSSION

I. <u>Plaintiffs' Motion for Continuance of Summary Judgment Motion</u>
   <u>Pursuant to Fed. R. Civ. P. 56(f)</u>

Plaintiffs first move, pursuant to Fed. R. Civ. P. 56(f), for a continuance of defendants' summary judgment motions. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

Plaintiffs assert that no discovery has occurred to date in this case. On the date agreed for their first appearance, defendants Green, Wieners, and Werder filed a motion to dismiss or in the alternative for summary judgment asserting (1) failure to state a claim/qualified immunity; (2) a motion for summary judgment for the same reasons; and (3) that this court lacks personal jurisdiction over defendants Wieners and Green. On January 20, 2005, defendant Massey filed "piggyback" motions, relying on the motions filed by defendants Werder, Green and Wieners.

Plaintiffs acknowledge the right of defendants to seek, at this time, consideration of whether allegations of the complaint state claims for relief, and consideration of defendants' claims of qualified immunity. However, plaintiffs assert that defendants' summary judgment motions should be continued to permit plaintiffs a reasonable opportunity to conduct discovery. I agree and grant plaintiffs' motion to continue defendants' summary judgment motions until after the parties have had an opportunity to conduct discovery.

II. <u>Defendants Werder's, Green's, Wieners' and Massey's Motions to Dismiss based on Qualified Immunity</u>

The individual defendants move to dismiss plaintiffs' complaint for failure to state a claim based on the qualified immunity doctrine because plaintiffs have failed to allege any

action that violated their clearly established constitutional rights. Defendants' pre-discovery motion to dismiss on qualified immunity grounds is pursuant to Fed. R. Civ. P. 12(b)(6) and must be decided on the basis of the pleadings alone. Butler v. San Diego District Attorney's Office, 370 F.3d 956, 964 (9th Cir. 2004).

Plaintiffs allege generally that Mayfield's arrest and searches of his home and office were conducted based upon warrants obtained in violation of the Fourth Amendment and that the investigation of Mayfield was initiated based on his religion in violation of his Fifth Amendment equal protection rights. Complaint, ¶¶ 39-44; 57-62.

The Supreme Court has held that even when the Fourth Amendment is violated, qualified immunity protects law enforcement officers from suit and liability where their mistake is reasonable under the circumstances. Hunter v. Bryant, 502 U.S. 224, 228 (1991). Qualified immunity applies when the law was not settled at the time the officer acted, or where it was not "clearly established" how this law applied in the particular circumstances the officer confronted. See Brosseau v. Haugen, 125 S.Ct. 596, 599-600 (2004). The defense is not limited to law enforcement officers, it applies across the board to shield from liability all executive officials whose actions do not violate rights clearly established in the circumstances. Anderson v.

<u>Creighton</u>, 483 U.S. 635, 642 (1987).

As stated by the Supreme Court, qualified immunity is "an immunity from suit rather than a mere defense to liability," that "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991). The issue of qualified immunity should be resolved "at the earliest possible stage in litigation," <u>Hunter</u>, 502 U.S. at 227. "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the violation of an actual constitutional right at all, and if so proceed to determine whether that right was clearly established at the time of the violation.'" <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999)(internal quotation omitted).

**A. Plaintiffs' Fourth Amendment Claims**

Plaintiffs allege that Mayfield was arrested on a material witness warrant because FBI officials, including the four individual defendants, "caused a false and misleading material witness arrest affidavit to be filed in the U.S. District Court for the District of Oregon," Complaint, ¶ 10, and because FBI officials similarly caused "false and misleading search warrant affidavits to be filed," <u>id.</u> ¶ 58, resulting in unlawful "physical and electronic searches of" the "family home, law office, safety deposit box and vehicles." <u>Id.</u> ¶ 59.

The Ninth Circuit has held that a civil rights claim alleging that law enforcement officers misled a magistrate judge into issuing a warrant must meet the same standards as a criminal defendant making a similar claim under Franks v. Delaware, 438 U.S. 154 (1978). See Hervey v. Estes, 65 F.3d 784 (9th Cir. 1985). A plaintiff must establish both a "substantial showing of a deliberate falsehood or reckless disregard [for truth] and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant." Hervey, 65 F.3d at 789. Only "a substantial showing of deliberate falsehood or reckless disregard for the truth," id. at 788, will overcome the "presumption of validity with respect to the affidavit supporting" the warrant. Franks, 438 U.S. at 171. "Negligence or innocent mistake are insufficient." Id. However, utilizing intentional or reckless misstatements in an arrest affidavit are a constitutional violation, and defeat a claim of qualified immunity. Branch v. Tunnell, 937 F.2d 1382, 1387 (9th Cir. 1991)("[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.").

Defendants Green, Wieners and Massey argue that they cannot be held liable for Werder's alleged falsehoods and omissions in the affidavits. I disagree. A law enforcement officer who knowingly supplies false information, or knowingly omits relevant information, to another officer who then drafts an affidavit based on that information is liable to the injured citizen. United States v. DeLeon, 979 F.2d 761, 763-64 (9th Cir. 1992).

The complaint alleges the following misrepresentations by defendant Werder:

1. Failed to inform the court that the SNP disagreed with the FBI's findings concerning LFP #17. Complaint, ¶ 34(a), (b).

2. Falsely stated that at the conclusion of the April 21st meeting in Spain between representatives of the SNP and the FBI, "it was believed that the SNP felt satisfied with the FBI laboratory's identification" of the Spanish fingerprint as Mayfield's, and failed to inform the court that at the conclusion of the April 21st meeting in Spain . . . the SNP "refused to validate" the FBI's fingerprint analysis. Complaint, ¶ 34(c),(d).

3. Falsely stated that FBI agent Green and the FBI lab considered the Spanish fingerprint a "100% positive identification" of Mayfield. Complaint, ¶ 34(e).

4. Failed to reveal defendant Massey's history of faulty fingerprint identification. Complaint, ¶ 34(f).

5. Falsely stated that it is believed that Mayfield may have traveled to Spain under a false or fictitious name, with false or fictitious documents. Complaint, ¶ 34(g).

6. Failed to inform the court that "the FBI had abandoned protocol" by "using extrinsic evidence (the Muslim factor) focusing on Mayfield's practice of the Muslim religion and association with co-practitioners to support their fingerprint matching." Complaint, ¶ 34(h).

Plaintiffs must show that but for the alleged inclusions or omissions, the warrant would not have issued.  After redrafting the affidavit to include all of plaintiffs' alleged omissions and deleting plaintiffs' alleged misstatements, based on the bare record, this court cannot be sure that the affidavit supports probable cause pursuant to the requirements of the Fourth Amendment.

A plaintiffs' <u>Franks</u> claim survives only if plaintiffs first establish a showing of either a deliberate falsehood or a reckless disregard for the truth.  This court must first determine whether the plaintiffs have properly alleged that the search and arrest warrant affidavits contained false and/or misleading statements.  If plaintiffs have made adequate allegations in this regard, the court then determines whether "corrected affidavits" would have defeated probable cause determinations.  <u>See</u> <u>Franks</u>, 438 U.S. at 157 ("when material that is subject to the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause").

I find that plaintiffs are entitled to discovery in order to support [or defeat] their allegations of deliberate falsehood or reckless disregard for the truth.  Specifically, whether defendants used improper techniques, allowed extraneous factors to influence their identifications, and ignored the SNP's advice

and warnings.  Specifically, plaintiffs contend that the SNP disagreed with the FBI's fingerprint match and that defendants failed to sufficiently include or explain that fact in the warrant affidavit.  Plaintiffs allege that defendants had in their possession a report issued by the SNP finding that LFP #17 and Mayfield's print provided a "negative" match. Plaintiffs allege that this report was never made available to the issuing judge.

Defendants respond that there was "no knowing or reckless misstatement given the affidavit's explicitly subjective characterization of the outcome of the April 21 meeting between the FBI and the SNP, namely that "it was believed that the SNP felt satisfied with the FBI laboratory's identification." Defendants' Memo in Support of Motion to Dismiss, p. 13. Defendants themselves admit that in characterizing the SNP's conclusion that the prints did not match as "preliminary," that characterization "obviously suggested the possibility that the SNP would adopt the FBI point of view[.]" Id.  Although defendants go on to say, "it also left open the possibility that the SNP's view would not change." Id.

Defendants ultimately assert that "probable cause existed because of the fingerprint match." Id. at p. 12.  Plaintiffs, however, have raised serious issues surrounding the validity of those fingerprint matches as made by the three individual

defendants.  Plaintiffs allege that Werder's statement that Mayfield's print was a "100% match" was at least reckless and possibly intentionally false.  Regarding specific information on Mayfield, it is unclear to plaintiffs what information the individual defendants had available to them prior to and during their individual fingerprint analyses.

Moreover, plaintiffs allege that the "corrected" affidavit fails to provide sufficient probable cause that Mayfield would not honor a subpoena.  The Ninth Circuit has stated that, "sufficient facts must be shown to give the judicial officer probable cause to believe that it may be impracticable to secure the presence of the witness by subpoena.  Mere assertion will not do."  Bacon v. United States, 449 F.2d 933, 943 (9ᵗʰ Cir. 1971). The court in Bacon held that "the fact that Bacon had access to large sums of money is at best remotely relevant to her possible recalcitrance.  There was no showing of past attempts by Bacon to evade judicial process, nor of past clandestine travels by Bacon."  Id. at 945.

Plaintiffs assert that Werder's "corrected affidavit" provides no basis for a court to conclude that Mayfield, an attorney with roots in the community, would not obey a subpoena. Again, plaintiffs' allegations of intentional or reckless misstatements greatly concern this court.  Therefore, the court will allow discovery on the issue of what information was known

to the defendants regarding Mayfield's flight risk and the likelihood that he would not obey a subpoena; specifically, of any past attempts to evade judicial process, or past clandestine travels.

Defendants' motions to dismiss or in the alternative for summary judgment based on qualified immunity as to plaintiffs' Fourth Amendment claim is denied, with leave to renew after discovery.

## B.  Plaintiffs' Fifth Amendment Claims

### Qualified Immunity

Plaintiffs allege that defendants Wieners, Green, Werder and Massey "knowingly and wrongfully selected [Mayfield] for arrest and imprisonment based upon his Muslim religion," and violated Mayfield's Fifth Amendment right to be "free from selective and discriminatory arrest and imprisonment."  Complaint, ¶ 41. Mayfield expressly challenges his "arrest and imprisonment" as discriminatory and violating the Fifth Amendment.  This is, in essence, a selective prosecution claim which draws on equal protection standards.  United States v. Armstrong, 517 U.S. 456, 465 (1996)(internal quotation omitted).

Defendants move to dismiss this claim alleging qualified immunity  because a reasonable official "very well could have been unsure of the level of constitutional protection against discrimination" afforded under the circumstances.  Wong v. United

<u>States</u>, 373 F.3d 952, 968 (9th Cir. 2004). Defendants assert
that based on <u>Graham v. Connor</u>, 490 U.S. 386 (1989), and the line
of cases following <u>Graham</u>, that it is unclear that plaintiffs can
proceed on a substantive due process-equal protection theory and
therefore defendants are entitled to qualified immunity on
plaintiffs' Fifth Amendment claim.

I disagree and find no qualified immunity for the defendants
based on the record before this court. Moreover, I deny
defendants' motions for summary judgment on plaintiffs' Fifth
Amendment claim finding that plaintiffs are at a minimum entitled
to engage in discovery prior to filing any opposition to this
motion.

### **Failure to State Claim - Fed. R. Civ. P. 12(b)(6)**

To defeat a Rule 12(b)(6) motion to dismiss plaintiffs'
Fifth Amendment claims, plaintiffs need only comply with the
requirement of Rule 8(a)(2) which is a "short and plain statement
of the claim showing that the plaintiff is entitled to relief."
Therefore, an Equal Protection claim cannot be dismissed for
failure to state  a claim unless "it is clear that no relief
could be granted under any set of facts that would be proved
consistent with the allegations." <u>Wong</u>, 373 F.3d at 969.

In <u>Wong</u>, the Ninth Circuit held that "bare allegations" that
an INS official engaged in religious discrimination against
plaintiff in denying her immigration benefits were sufficient to

state an Equal Protection claim.  <u>Id.</u>  Moreover, the Supreme

Court has "specifically disclaimed any requirement that

discrimination plaintiffs plead all elements of a prima facie

case."  <u>Id.</u> (citing <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002)).

In <u>Swierkiewicz</u>, the Court held that there is not a heightened

pleading requirement in discrimination cases.

Moreover, the Ninth Circuit has rejected the proposition

that a motion to dismiss should be used to assess the strength of

the case, instead stressing the availability of other procedural

devices under the Federal Rules - including a motion for more

definite statement under Rule 12(e) or a motion for summary

judgment under Rule 56 - as tools to weed out meritless claims.

<u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir.

2002)(citing <u>Swierkiewicz</u>, 534 U.S. at 514).

Plaintiffs' complaint satisfies the standards required by

Rule 8(a) because it provides defendants with notice of the basis

for plaintiffs' claims.  Defendants have fair notice that

plaintiffs' Equal Protection claim arises from defendants'

alleged improper reliance upon plaintiffs' Muslim religion in

selecting Mayfield for investigation, arrest and imprisonment.

Defendants' motions to dismiss plaintiffs' Fifth Amendment Claim,

or in the alternative for summary judgment are denied.

///

///

III. <u>Personal Jurisdiction Over Defendants Wieners, Green and</u>
      <u>Massey</u>

Defendants Wieners, Green and Massey also move to dismiss the claims against them based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). I find that this court has personal jurisdiction over these three defendants and therefore deny defendants' motion to dismiss plaintiffs' claims on this basis.

It is well established that in order to avoid dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), plaintiffs must establish personal jurisdiction over each defendant. However, when, as here, a motion to dismiss for lack of personal jurisdiction is made as defendants' initial response to a complaint and the court decides the jurisdictional issue based on the pleadings and affidavits as opposed to an evidentiary hearing, "the plaintiff is only required to make a prima facie showing of jurisdictional facts to defeat the motion to dismiss." <u>nMotion, Inc. v. Environmental Tectonics Corp.</u>, 196 F.Supp.2d 1051, 1055 (D. Or. 2001). Although plaintiff cannot simply "rest on the bare allegations of its complaint," <u>Amba Marketing Systems, Inc. v. Jobar International, Inc.</u> 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved

in plaintiff's favor.  Id.

To establish personal jurisdiction over a defendant, a two-part showing is required: (1) the forum state must have an applicable long-arm statute; and (2) the assertion of jurisdiction must comport with the constitutional requirements of due process.  Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977).  Due process requires minimum contacts between the defendants and the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310 (1945).

Plaintiffs assert that this court has specific jurisdiction over defendants.  To be subject to specific jurisdiction:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purpose-fully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one that arises out of or relates to the defendant's forum-related activities; [and]
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987); Shute v. Carnival Cruise Lines, 897 F.2d 377, 310 (9th Cir. 1990).

Plaintiffs bear the burden of satisfying the first two prongs of the test.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th

Cir. 1990).  If plaintiffs fail to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  If plaintiffs succeeds in satisfying both of the first two prongs, the burden then shifts to defendants to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).  For the reasons that follow, I find that plaintiffs have stated a prima facie case of personal jurisdiction over the three individual defendants at issue, Wieners, Green and Massey.

The Ninth Circuit has noted a distinction between "purposeful availment" and "purposeful direction."  A purposeful direction analysis is appropriate for suits sounding in tort, as opposed to suits sounding in contract.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Whereas purposeful availment "requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state, Shute, 897 F.2d at 381, "[a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere."  Id.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75 (1984)(finding purposeful direction where defendant published magazines in Ohio

and circulated them in the forum state, New Hampshire); <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 899 (9th Cir. 2002)(finding purposeful direction where defendant distributed its pop music albums from Europe in the forum state, California).

Purposeful direction is evaluated under the three-part "effects" test from the Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  The Ninth Circuit recently described the test as follows:

> <u>Calder</u> stands for the proposition that purposeful availment is satisfied even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state. . . .'  [Under] <u>Calder</u>, the 'effects' test requires that the defendant allegedly have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.

<u>Dole Food Co. Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002)(internal citations omitted).

First, the court must examine whether the defendants committed an "intentional act" in examining LFP #17 and matching it with Mayfield's print.  Pursuant to <u>Schwarzenegger</u>, the court requires that a defendant have an intent to perform "an actual, physical act in the real world."  374 F.3d at 806.  Here, defendants committed an intentional act when they allegedly misidentified Mayfield's fingerprint, and provided this identification information to Werder in Oregon.

///

Second, the act must have been "expressly aimed at the forum state." Id. Plaintiffs allege that defendants intentional act (the misidentification of Mayfield's fingerprint, based at least in part, on his Muslim religion; and the communication of that misidentification to another defendant in Oregon) was expressly aimed at Oregon. Plaintiff alleges that it was not merely "untargeted negligence" by the defendants that happened to cause some harm to plaintiffs, rather it was defendants' intentional behavior in falsely identifying the LFP #17 as matching Mayfield's based, at least in part, on Mayfield's Muslim faith that constituted intentional behavior directed at Mayfield in Oregon.

Moreover, plaintiffs allege that defendants' actions were expressly aimed at and involved law enforcement in Oregon. That is evidenced by Green's March 20, 2004, report that was sent to law enforcement in Oregon concluding that LFP #17 was a match to Mayfield's print. Plaintiffs allege that all three defendants communicated in some fashion with defendant Werder the information that LFP #17 matched Mayfield's print.

While true that the Supreme Court warns that a "defendant will not be hailed into a jurisdiction solely as a result of random fortuitous, or attenuated contacts or of the unilateral activity of another party," I find those are not the circumstances here. Burger King Corp., 471 U.S. at 462 (internal

quotations omitted).  Plaintiffs allege that defendants' actions specifically focused on and targeted Mayfield.  I do not find that these defendants' actions were only incidentally directed at Mayfield.  Instead, based on plaintiffs' allegation, I find that defendants' actions were purposeful and deliberate, with an express aim at Mayfield and the forum state.

Finally, <u>Calder</u> requires that defendants' actions caused harm that the defendant knew was likely to be suffered in the forum state.  Again, based on plaintiffs' allegation, I find that this prong is met.  Defendants knew when they communicated with Werder in Oregon that their communications would have an impact that would likely be suffered in Oregon. <u>See</u> <u>Bancroft & Masters,</u> <u>Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000). Plaintiffs have shown that defendants' actions were purposefully directed at them in Oregon.

Plaintiffs must next show that their claims arise out of Oregon-related activities of the defendants.  The Ninth Circuit uses a "but for" test of causation to determine the second prong of the jurisdictional test.  <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001)(internal citation omitted). Specifically, plaintiffs' claim must result from the alleged forum-related activities.  This relatedness requirement is met if the cause of action would not have arisen "but for" the alleged contacts between the defendants and the forum state.

I find that accepting plaintiffs' allegations as true, this prong has been met.  Here, the three defendants' alleged misidentification of Mayfield's fingerprints was the single connection between Mayfield and the bombings in Spain.  The fingerprint identification was the primary factor in the probable cause analysis which ultimately led to Mayfield's arrest and resulting claims.  The second prong is satisfied.

Finally, the third prong requires that exercise of personal jurisdiction over a non-resident defendant be reasonable.  When a plaintiff satisfies its burden regarding the first two prongs of the test for specific jurisdiction, exercise of jurisdiction is presumptively reasonable.  To rebut that presumption, defendants must present a compelling case that the exercise of jurisdiction would, in fact, be unreasonable.  Lee v. City of Los Angeles, 250 F.3d 668, 695 (9th Cir. 2001).

The reasonableness determination requires that a court consider the following seven factors: (1) the extent of purposeful interjection; (2) the burden on the defendants to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of defendants' state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiffs' interest in convenient and effective relief; and (7) the existence of an alterative forum.

<u>Shute</u>, 897 F.2d at 386.

The first factor weighs in favor of plaintiffs. Defendants allegedly misidentified Mayfield's fingerprints and then communicated that misidentification to Werder in Oregon, including sending reports and telephone conversations. Second, since Wieners and Green are represented by the agency defendants, they bear no great burden in defending this lawsuit outside of Virginia. Massey, however, is not being defended by the agency defendants so his burden is greater having to defend outside of his state of residence, Virginia. Third, I find no conflict with the sovereignty of defendants' state (Virginia for all three defendants) because the court has subject matter jurisdiction over this lawsuit based upon federal questions. Fourth, I find that Oregon clearly has a strong interest in adjudicating this lawsuit where five of its citizens were allegedly harmed. Fifth, I find that the most efficient judicial resolution of this controversy would occur in Oregon where the imprisonment took place, as well as all of the allegedly illegal searches and seizures. Sixth, resolution of this lawsuit in Oregon is important to plaintiffs' interest in convenient and effective relief versus instigating several cases around the country. Finally, I agree that the Virginia courts provide an alternative forum. In sum, I find that defendants have failed to present a "compelling case" that the exercise of jurisdiction in Oregon

would be unreasonable.

Defendants Wieners, Green and Massey's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is denied.

IV. <u>Defendants DOJ and FBI's Motion to Dismiss Counts Twelve and Thirteen of the Complaint</u>

**Plaintiffs' Complaint - Count Twelve**

Count Twelve of the complaint states a claim for "injunctive and declaratory relief re FISA searches and surveillance." Complaint, ¶ 87. Plaintiffs allege that pursuant to FISA they were subjected to secret surveillance and searches of their family home, law office, vehicles, and communications. Plaintiffs allege that this information has been disseminated to at least eight agencies of the Federal government, including the Central Intelligence Agency, the National Security Council, the Department of Defense, the Department of Homeland Security, the DOJ, the FBI, the Department of the Treasury, and the National Security Agency. <u>Id.</u> at ¶ 88.

**Background on FISA and the Patriot Act**

In 1978, FISA was enacted by Congress to "provide a procedure under which the Attorney General can obtain a judicial warrant authorizing the use of electronic surveillance in the United States for foreign intelligence purposes." S. Rep. No. 95-604, 95th Cong. 2d Sess. 5, reprinted at 1978 U.S.C.C.A.N.

3906. In 1994, FISA was amended to permit applications for orders authorizing physical searches as well as electronic surveillance. 50 U.S.C. §§ 1821-1829.

The FISA established two special courts. The FISC which is comprised of eleven district court judges appointed by the Chief Justice of the United States Supreme Court, and the FISC of Review, which is comprised of three district court or court of appeals judges also appointed by the Chief Justice. 50 U.S.C. §§ 1803(a),(b). The FISC has jurisdiction to grant or deny applications for orders authorizing electronic surveillance and physical searches under the procedures specified in FISA, and the FISC of Review has jurisdiction to review the denial of any application made under FISA. 50 U.S.C. §§ 1822(b)-(d).

FISA also allows the Attorney General to authorize the execution of an emergency search or surveillance so long as it is approved by the FISC within 72 hours. 50 U.S.C. § 1824(e)(1)(A). Applications for court orders authorizing searches or surveillance under FISA are made to the FISC under oath by a federal officer with the approval of the Attorney General. 50 U.S.C. §§ 1801(g), 1804, 1823. The application must identify or describe the target of the search or surveillance, and establish that the target is either a "foreign power" or an "agent of a foreign power." 50 U.S.C. §§ 1804(a)(3), 1804(a)(4)(A), 1823(a)(3), 1823(a)(4)(A). FISA defines "foreign power" to

include a "group engaged in international terrorism." 50 U.S.C.
§§ 1801(a)(1),(4). The definition of an "agent of a foreign
power" includes any person who "knowingly engages in clandestine
intelligence gathering activities for or on behalf of a foreign
power[,]" or any person who "knowingly engages in sabotage or
international terrorism, or activities that are in preparation
therefor, for or on behalf of a foreign power." 50 U.S.C. §§
1801(b)(2)(A),(c). Where a "United States person" - a citizen or
a permanent resident alien - is involved, the definition of an
"agent of a foreign power" requires, in most instances, a showing
of criminal activity. 50 U.S.C. §§ 1801(b)(2), (I).

In October 2001, Congress amended FISA to change "the
purpose" language found in § 1804(a)(7)(B) to "a significant
purpose." Congress's intent in amending § 1804(a)(7)(B) was to
break down barriers between criminal law enforcement and
intelligence gathering by adding § 1806(k): "Federal officers who
conduct electronic surveillance to acquire foreign intelligence
information" to "consult with Federal law enforcement officers to
coordinate efforts to investigate or protect against attack or
other grave hostile acts, sabotage or international terrorism, or
clandestine intelligence activities by foreign powers or their
agents." 50 U.S.C. § 1806(k)(1). And such coordination "shall
not preclude" the government's certification that a significant
purpose of the surveillance is to obtain foreign intelligence

information, or the issuance of an order authorizing the surveillance.  Id. § 18096(k)(2).

Each FISA application must include a certification from a high-ranking Executive Branch official, such as the Director of the FBI, that the official "deems the information sought [by the search or surveillance] to be foreign intelligence information," and that "a significant purpose" of the search or surveillance is to obtain "foreign intelligence information."  50 U.S.C. §§ 1804(a)(7)(A)-(B), 1823(a)(7)(A)-(B).  FISA defines "foreign intelligence information" to include information that "relates to, and if concerning a United States person is necessary to" protect the United States from espionage and international terrorism, an actual or potential attack, or the national defense or security of the United States generally.  50 U.S.C. §§ 1801(e)(1),(2).

An individual judge of the FISC reviews each FISA application following its submission.  50 U.S.C. §§ 1805, 1824. To approve an application, the judge must find that it establishes "probable cause" to believe that the target of the search or surveillance is a foreign power or an agent of a foreign power.  Where the target of the search or surveillance is a U.S. citizen the judge must also find that the Executive Branch's certification that a significant purpose of the search or surveillance is to obtain foreign intelligence information is

not "clearly erroneous."  50 U.S.C. §§ 1805(a)(5), 1824(a)(5);
H.R. Rep. No. 95-1283, Part I, 95th Cong. 2d Sess. (1978), at 80-81.

**Plaintiffs' Allegations**

Plaintiffs allege that prior to the commencement of this lawsuit, Mayfield, through his court appointed public defenders, demanded that then Attorney General John Ashcroft detail the FISA searches and surveillance performed and purge all government files of the information collected.  Ashcroft refused to do so and plaintiffs allege that several federal agencies continue to retain information collected during the allegedly illegal and unconstitutional searches and surveillance.  Complaint, ¶ 88.

Specifically, plaintiffs request a declaration from this court:

    a. That the provisions of the Patriot Act and FISA which
    permit the federal government to secretly collect,
    disseminate and retain information from a person without
    first requiring the government to demonstrate to a court
    the existence of probable cause that the person has
    committed a crime, are unconstitutional;

    b. That the provisions of the Patriot Act and FISA which
    permit the federal government to secretly perform "sneak
    and peek" physical searches of the home, office and
    vehicles of a person without first requiring the
    government to demonstrate to a court the existence
    of probable cause that the person has committed a
    crime, are unconstitutional;

    c.  That the provisions of the Patriot Act and FISA which
    permit the federal government to perform electronic
    surveillance and wiretaps of a person without first
    requiring the government to demonstrate to a court the
    existence of probable cause that the person has committed

a crime, are unconstitutional.

Id. at ¶ 89.

> Plaintiffs further request that an injunction issue:

> Based on information and belief, plaintiffs allege that the federal government utilized the challenged provisions of the Patriot Act and FISA to secretly and wrongfully collect, disseminate and retain information and communications from them.  Because defendants Ashcroft, the DOJ and FBI refuse to divulge the full extent of said collection, dissemination and retention of information and communications, because said collection, dissemination and retention of information and communications violate plaintiffs' Fourth Amendment right to be secure in their home, law office, vehicles and communications from unreasonable searches and seizures, and because plaintiffs have no other plain, speedy or adequate remedy at law, plaintiffs seek an injunction requiring defendants Ashcroft, the DOJ and the FBI:

> a. To retrieve and destroy all ... information and communications collected pursuant to FISA[;]

> b.  To seek the return and destruction from agencies of other governments of all information and communications collected pursuant to FISA[;]

> c.  To refrain from distributing to any requesting party any information illegally collected or retained collected pursuant to FISA[.]

Id. at ¶ 90.

**Injunctive Relief**

As set forth above, plaintiffs move for an injunction requiring the government to retrieve and destroy all materials pertaining to plaintiffs that they allege were illegally collected, disseminated, and retained by the government pursuant to FISA.  Plaintiffs also move for a declaratory judgment that FISA, as amended by the Patriot Act, is unconstitutional.

Defendants first respond to plaintiffs' request for injunctive relief, arguing that plaintiffs' 12th claim is moot due to defendants' willingness to turn over the material requested by plaintiffs. Next, pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss plaintiffs' claim of unconstitutionality of the Patriot Act for failure to state a claim for which relief can be granted. At this stage in the proceedings, the court will address only plaintiffs' request for injunctive relief.

In that regard, defendants' assert that "upon the conclusion of the relevant proceedings, the government is willing to destroy the materials seized or reproduced during the execution of searches authorized by the FISC and communications intercepts obtained during the execution of surveillance authorized by the FISC." Defendants' Reply in Support of Motion to Dismiss, p. 14. Defendants are further willing, "during the pendency of the relevant proceedings, to retrieve these materials and secure them in the vault at the FBI, in the same manner that the materials gathered pursuant to criminal search warrants are being maintained pursuant to Judge Jones' order and consistent with the classified nature of the materials." Id. Therefore, with the "resolution of [plaintiffs'] request for injunctive relief," defendants argue that Count 12 must be dismissed.

///

First, because no injunctive relief has been provided to plaintiffs at this point in time, I disagree that plaintiffs' Claim Twelve is currently in a posture to be dismissed on that basis. Further, despite defendants' representation to the contrary, I find that defendants' willingness to gather back all of the disseminated materials and hold them in a secure place until this ligation has concluded while allowing access to the materials to defend this lawsuit and to respond to any "pending internal investigations," is not the injunctive relief plaintiffs have requested.

I am persuaded by plaintiffs' argument that "consideration of the facial constitutionality of FISA, as amended by the Patriot Act, without the factual development of the full context of the case and the extent of deprivation of the Mayfield family's rights, is out of order." Plaintiffs' Memo in Opposition to Defendants' Motion to Dismiss Counts Twelve and Thirteen, p. 14. In order for plaintiffs to achieve the injunctive relief they seek, that is, the purging of all government files of information collected on plaintiffs during FISA surveillance and searches, plaintiffs are first entitled to an opportunity to determine the nature of the surveillance and searches conducted, and a specific description of the data and documents collected. Pursuant to 50 U.S.C. § 1806, even if the Attorney General certifies that any disclosure would "harm the

national security of the United States," plaintiffs are still entitled to request that this court review the materials ex parte and in camera "to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f).

Regarding FISA authorized physical searches, 50 U.S.C. § 1825(b) holds that if the Attorney General determines that there exists no national security interest in continuing to maintain the secrecy of the search, the "Attorney General shall provide notice to the United State person whose residence was searched of the fact (of the search) conducted pursuant to this chapter and shall identify any property of such person seized, altered, or reproduced during the search." 50 U.S.C. § 1825(b).

The defendants subsequently provided plaintiffs notice pursuant to 50 U.S.C. § 1825(b) via a letter to plaintiffs dated March 24, 2005, wherein the government formally advised Mr. Mayfield that he was the "target of physical searches of his residence, and . . . the following property was seized, altered or reproduced during FISA searches of his residence: three hard drives of three desk top computers and one loose hard drive were copied; several documents in the residence were digitally photographed; ten DNA samples were taken and preserved on cotton swabs and six cigarette butts were seized for DNA analysis; and approximately 335 digital photographs were taken of the residence

and property therein." Ex. A, Plaintiffs' Supplemental Memo of
Law. Mayfield was also formally notified that "he was the target
of electronic surveillance and other physical searches authorized
pursuant to FISA." Id.

Plaintiffs responded that the defendants' notification
contained in the March 24, 2005, letter was not adequate,
"violating the intent and plain meaning of the statute that
requires notification." Ex. B, Plaintiffs' Supplemental Memo of
Law. Plaintiffs asserted that Mayfield's constitutional and
statutory rights were not satisfied by "the government merely
summarizing the search," and that, Mayfield is entitled "to a
much more detailed explanation of what occurred." Id.
Plaintiffs then list nearly three pages of search and
surveillance "specifics" that they assert they are entitled to
know. Id.

I agree that before plaintiffs can adequately fashion their
claim for injunctive and declaratory relief under Claim Twelve,
they first need to determine the extent to which data and
information have been retained by the federal government, and the
extent to which data and information have been disseminated
throughout the federal government. After plaintiffs' conduct
discovery, they will then be in a position to request specific
injunctive and declaratory relief.

///

Therefore, defendants' motion to dismiss Count Twelve pursuant to Fed. R. Civ. P. 12(b)(6) is denied with leave to renew after plaintiffs' have had an opportunity to amend their complaint to request specific injunctive and declaratory relief.

**Plaintiffs' Complaint - Count Thirteen**

Count Thirteen of plaintiffs' complaint is a claim for return of property improperly seized.  Complaint, ¶ 91. Plaintiffs allege that prior to the commencement of the lawsuit at bar, Mayfield's criminal defense attorneys requested that defendants return all material seized from Mayfield pursuant to search warrants issued by a judge of this court, and destroy all copies of the material.  Id. at ¶ 92.  Plaintiffs concede that the DOJ and FBI have returned all originals, however, they have refused to destroy copies of the material.  Id.  Plaintiffs allege that copies of the materials have been disseminated to various government agencies and departments. Id.  Plaintiffs allege that defendants "are insisting that copies of all material seized . . . remain available for use by [defendants], remain available for inspection by additional government employees and agencies, and remain available to all government agencies and departments that received copies of the material."  Id. at ¶ 93.

Defendants move to dismiss this claim alleging it is barred by the doctrine of res judicata, or alternatively, that it fails to state a claim upon which relief can be granted.  Defendants

contend that at the conclusion of the material witness

proceeding, District Judge Robert Jones denied Mayfield's request

for "identical relief." See In re: Federal Grand Jury 03-01,

Misc. No. 04-MC-9071, Order dated Sept. 20, 2004 (doc. #74).

The material witness proceeding involving Mayfield was

initiated in the District Court for the District of Oregon on May

6, 2004. In re: Federal Grand Jury, supra. On May 24, 2004, on

the government's motion, the court dismissed the complaint

against Mayfield and ordered that "all property seized in the

execution of the search warrants at Mayfield's residence, office

and vehicles . . . be returned to Mayfield and any copies thereof

in the government's possession be destroyed." (Order, May 24,

2004, doc. #33). Judge Jones further denied Mayfield's motion

pursuant to Fed. R. Crim. P. 41(g) requesting discovery.

Rule 41(g) states:

> A person aggrieved by an unlawful search and seizure of
> property or by the deprivation of property may move for
> the property's return. The motion must be filed in the
> district where the property was seized. The court must
> receive evidence on any factual issue necessary to decide
> the motion. If it grants the motion, the court must
> return the property to the movant, but may impose
> reasonable conditions to protect access to the property
> and its use in later proceedings.

Fed. R. Civ. P. 41(g).

The government subsequently moved to amend the court's Order

after learning of Mayfield's intent to file the suit at bar. The

government did not object to returning the originals of all

property seized[2], however, the government requested that it be allowed to retain copies of all items seized in order to "defend itself and its employees in any future litigation with Mayfield or his family, as well as for . . . use in other legitimate inquiry."

On September 20, 2004, before this action was filed, Judge Jones granted the government's motion to amend and rescinded his prior order requiring the destruction of all copies of all materials seized.  The court ordered that:

> The Government and government officials may retain copies of any documents or materials that are or may be relevant to any future civil litigation or official investigation. The Government shall keep the materials in a secure place, and must limit employee access to the materials except as necessary to respond to any civil claim brought by Mayfield or his family or any official concerning the material witness proceeding.

Order, Sept. 20, 2004, at p. 5-6.  Mayfield filed a notice of appeal from that Order and that appeal is pending.  <u>United States v. Mayfield</u>, 9th Cir. No. 04-30432.

Restrictions on the government's right to maintain, disseminate, and use the materials at issue are established by Judge Jones' order.  The parties argued this matter before the Ninth Circuit Court of Appeals on July 15, 2005, prior to the argument in this matter.  It is now for the Court of Appeals to determine whether that order was issued in error, pursuant to the

---

[2] Plaintiffs acknowledge that the government has, in fact, returned all of the originals. Complaint, para. 92.

pending appeal.  Therefore, as this court stated at oral argument, plaintiff's thirteenth claim for relief is stayed pending the ruling by the Court of Appeals on the underlying matter.

<u>CONCLUSION</u>

In conclusion, the parties' motions are ruled on as follows:

(1) Plaintiffs' motion for continuance of summary judgment motions (doc. 43) is granted as follows: plaintiffs' motion is granted as to defendants' alternative motions for summary judgment.  Plaintiffs' responses in opposition to defendants' motions are due after discovery.

(2)  Plaintiffs' motion to compel defendant Gonzales to provide notice (doc. 47) is denied with leave to renew.  Because the parties have not engaged in any discovery, the court will wait until discovery has commenced to resolve any potential disclosure disagreements, including any obligation by defendants' to provide plaintiff Notice pursuant to 50 U.S.C. §§ 1806 and 1825(b), beyond the March 24, 2005, letter provided by defendants to  plaintiffs.  The court stands fully prepared to examine any and all material <u>in camera</u>.  Lastly, the court reserves the right to assign the matter of any discovery issues in this case, including any dispute around plaintiffs' entitlement to certain discovery, to a Special Master, including another judge of this court.

(3) Defendant John T. Massey's motion to dismiss or in the alternative for summary judgment (doc. 36) is denied as follows: Massey's motion to dismiss or in the alternative for summary judgment based on qualified immunity as to plaintiffs' Fourth Amendment claim is denied with leave to renew following discovery. Massey's motion to dismiss plaintiffs' Fifth Amendment claim based on qualified immunity, failure to state a claim, or alternatively for summary judgment is denied. Massey's motion to dismiss based on lack of personal jurisdiction is denied.

(4) Defendants Werder's, Green's and Wieners' motion to dismiss or in the alternative for summary judgment (doc. 31) is denied as follows: Werder's, Green's and Wiener's motion to dismiss or alternative motion for summary judgment based on qualified immunity as to plaintiffs' Fourth Amendment claim is denied with leave to renew following discovery. Werder's, Green's and Wiener's motion to dismiss plaintiffs' Fifth Amendment claim based on qualified immunity, failure to state a claim or alternatively, for summary judgment is denied. Green and Wiener's motion to dismiss based on lack of personal jurisdiction is denied.

(5) Finally, defendants Department of Justice and Federal Bureau of Investigation motion to dismiss counts twelve and thirteen of the complaint (doc. 28) is denied as follows:

defendants' motion is denied as to plaintiffs' twelfth claim with leave to renew; and defendants' motion is denied as to plaintiffs' thirteenth claim. Plaintiffs' thirteenth claim is stayed pending a ruling by the Ninth Circuit Court of Appeals in the underlying matter, <u>United States v. Mayfield</u>, 9th Cir. No. 04-30432.

IT IS SO ORDERED.

      Dated this  28  day of July 2005.




                       /s/ Ann Aiken
                        Ann Aiken
             United States District Judge